J-S22004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: A.Y.L.R., F.R.L.R., J.L.R., H.R., A.L.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: E.L.R., FATHER | No. 1605 MDA 2015 |

Appeal from the Decree Entered August 18, 2015
in the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 458 of 2015
69 of 2015
70 of 2015
71 of 2015
72 of 2015

BEFORE: MUNDY, J., DUBOW, J., and STRASSBURGER, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 24, 2016**

Appellant, E.L.R. ("Father") appeals from the Decrees involuntarily terminating his parental rights to five of his children: A.Y.L.R., F.R.L.R., J.L.R., H.R., and A.L.R. ("the Children") pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a) and (b). We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

In June, 2010, the Lancaster County Children and Youth Social Service Agency ("the Agency") first came into contact with A.R., the mother of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Children ("Mother"), when she gave birth to A.Y.L.R, the first of five children that Mother had with Father in a five year period.[1] Both Mother and A.Y.L.R. tested positive for cocaine.

Mother moved to Philadelphia and, a year later, in September 2011, Mother gave birth to the parents' second child, F.R.L.R in Philadelphia. F.R.L.R. also had cocaine in his system when he was born. F.R.L.R was released to Father in Lancaster and the Agency closed its file.

Seven months later, in April, 2012, Mother returned to Lancaster and was living with Father and the children. The Agency again opened its file on this family. Aware of Mother's significant untreated substance abuse issues, the Agency directed that Father was to ensure that Mother did not have any unsupervised contact with the children.

In August, 2012, less than a year after giving birth to F.R.L.R., Mother gave birth to the parents' third child, J.L.R. Again, Mother and her baby tested positive for cocaine. J.L.R. was released to Father.

In January 2013, Mother reported that she had lied about going to Philadelphia, and had been living with Father the entire time, hiding whenever a caseworker came to the house. Father denied that Mother was

_____

[1] At that time, Mother already had a son, L.P.R., born in January 2007, and whose paternity was never established. Mother's appeal regarding the termination of her parental rights to L.P.R., as well as the five children involved in this case, is pending at No. 1606 MDA 2015.

living with him, told the Agency that he had moved to New Jersey, but would not provide an address. The Agency again closed its file.

In May, 2013, Mother pled guilty to five counts of forgery and was sentenced to probation.

A year after the birth of J.L.R., in August 2013, Mother gave birth to the parents' fourth child, H.R. H.R. was born not only with cocaine in his system, but also prematurely.

The Agency then learned that Mother was back in Lancaster and that she and the five children were living with Father. Although the Agency had directed Father not to leave the children alone with Mother because she had significant untreated substance abuse issues, Father disregarded this directive and permitted Mother, who had not yet addressed her substance abuse issues, to care for the children when he went to work.

The Agency filed a Dependency Petition against the parents and on November 4, 2013, the court granted legal custody of the Children to the Agency, removed the Children from the care of the parents and placed them in foster care.

A year after the birth of J.L.R, in August, 2014, Mother gave birth to the parents' fifth child, A.L.R. Although Mother admitted to taking cocaine during the first trimester of her pregnancy, neither she nor A.L.R. tested positive for cocaine at the time of the Child's birth. The Child, however, was born prematurely and remained in the intensive care unit of the hospital for two and a half weeks.

Upon the Child's release from the hospital, the Agency filed a Dependency Petition for A.L.R. and the court granted legal custody of the Child to the Agency and placed the child in foster care with her siblings.

In an effort to reunify the Children with the parents, the Agency provided the parents with Family Service Plan ("FSP") objectives in order to resolve the issues that led to the removal of the Children from them. The parents, however, did little to address the issues that led to the removal of Children during the year in which the Children were in foster care and consequently, the parents did not meaningfully comply with their FSP objectives. As a result, on November 24, 2014, the parents' permanency goal for the five oldest children in its custody was changed to adoption. On February 9, 2015, the permanency goal for A.L.R. was changed to adoption.

On January 13, 2015, the Agency filed a Petition to Terminate Father's Parental Rights ("TPR Petition") with regard to the four older children and on February 26, 2015, the Agency filed a TPR Petition with regard to the youngest child, A.L.R.

The Orphans' Court held evidentiary hearings on the Agency's TPR Petitions for the five children on July 13, 2015, and August 10, 2015. The trial court granted the petitions on August 18, 2015. Father appeals from the decrees.[2]

_____

[2] In derogation of Pa.R.A.P. 341, Father filed a single notice of appeal even though the Orphans' Court entered two separate decrees. However,
*(Footnote Continued Next Page)*

## ISSUE ON APPEAL

Father raises the following issue on appeal:

A. Whether the [orphans'] court erred in terminating Father's parental rights?

Father's Brief at 13.

## LEGAL ANALYSIS

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

because no one involved in these cases has objected, and the court addressed Father's issue pertaining to each order, we do not find this procedural error fatal to Father's appeal. *See Dong Uan Chen v. Saidi*, 100 A.3d 587, 589 n.1 (Pa. Super. 2014).

or abused its discretion." ***Id.*** We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** We may not reverse, however, merely because the record would support a different result. ***Id.*** at 826-27.

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. ***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004). In addition, in order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). ***See In re B.L.W.*** 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In the instant case, the Orphans' Court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a) and (b). We affirm the trial court's decisions on the basis of 23 Pa.C.S.A. § 2511(a)(1) and 2511(b)*.*

**Termination Pursuant to Section 2511(a)(1)**

Section 2511(a)(1) provides that the trial court may terminate parental rights if the Petitioner establishes that for six months, the parent demonstrated a settled intent to relinquish a parental claim or a refusal or failure to perform parental duties:

> (a) The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

23 Pa.C.S.A. 2511(a)(1). This Court has interpreted this provision as requiring the Petitioner to demonstrate a settled intent to relinquish parental claim to a child or a refusal or failure to parent:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce **clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties.**

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations omitted)(emphasis added).

This Court has defined "parental duties" in general as the obligation to affirmatively and consistently provide safety, security and stability for the child:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires

that a parent exert himself to take and maintain a place of importance in the child's life.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa. Super. 2004) (citations omitted).

Moreover, a parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

***Id.*** (internal citations omitted).

Most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." ***Id***.

In the instant case, the Orphans' Court properly granted the Petition to Terminate Father's Parental Rights because for the fifteen months that the Agency had custody of the Children, Father failed not only to protect the Children from the risks that the Mother's untreated substance abuse could potentially cause them, but also to meet his Family Service Plan ("FSP") objectives. ***Opinion Sur Appeal***, dated 10/13/15, at 11-15. Therefore, for a period in excess of six months preceding the filing of the Petitions to Terminate Parental Rights, the Father "evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. 2511(a)(1).

In particular, the Orphan's Court properly found that Father failed to recognize the risk that he created for the Children by leaving them in the care of Mother while she suffered from untreated drug abuse issues. **Opinion Sur Appeal** at 13-15. The trial court concluded that this refusal to recognize the risk that the Mother's caring for the Children created and refusal to protect them from such a risk demonstrates Father's failure to perform parental duties:

> Father, while without drug problems, cannot seem to distance himself from Mother and has repeatedly, despite Agency restrictions, allowed her not only to live in his house with the [C]hildren, but to take care of the [C]hildren unsupervised. He has lied to the Agency repeatedly about Mother's presence and activities. **Dr. Gransee testified [sic] that Father could not comprehend the effect Mother's activities would have on the [C]hildren. Leaving children in the lone care of a cocaine addict is not a situation that can be condoned by the Agency of the Court.** While Father might be capable of caring for the [C]hildren, his lack of candor and trustworthiness, and most of all, his lack of understanding of the risk Mother poses to the [C]hildren, forecloses a return to him. The Court cannot take the risk that once the [C]hildren are returned to Father's house, Mother will not be far behind.

*Id*. (emphasis added).

The Orphan's Court also properly found that Father failed to comply with his FSP objectives. The Agency referred Father to PA Counseling so that He could obtain the necessary mental health treatment and domestic violence treatment, but Father did not attend. *Id.* at 7-8*.*

Father argues that he met his FSP objectives by going to another service provider. The Orphan's Court properly rejected this claim because

the Agency could not verify the quality of services from the other providers and to the extent the Father attended, he did so sporadically:

> Both Father and Mother expressed displeasure that the Agency refused to accept their self-referred treatment programs as evidencing progress with their plans. Such a belief is unrealistic. The purpose of the plan is not to give the parents a tentative outline of tasks to perform simply for the sake of performance. The purpose is to provide remedial treatment and information to the parent[s] so that they can overcome the behavior which caused the removal of the children from their custody and thereby become fit and appropriate parents within a reasonable time. The parents in this case chose their own remedial avenues, without any knowledge that those avenues conformed to those the Agency considered appropriate and adequate for the needs of the case. The parenting program [to which the parties self-referred] might be lacking in information, or rigor, or accuracy. It cannot be accepted by the Agency in place of a [personal parenting trainer] simply because it is titled "Parenting Program." **The Court agrees with the Agency that sporadic attendance at self-referred programs does not constitute the completion of a service plan to justify the return of the [C]hildren to the home.**

*Id*. at 14-15 (emphasis added).

Additionally, Father made minimal effort to remain in contact with his caseworker and refused to submit to random urine screens. *Id.* at 9*.*

Finally, the Orphan's Court did not find the Father's testimony to be credible:

> The Court has witnessed the testimony of both Mother and Father and has found it to be non-credible. Mother lied repeatedly to the Agency and the Court. Father lied repeatedly to the Agency and the Court. The motivation of their lies was to place the [C]hildren in the custody of a cocaine-addicted mother.

*Id.* at 16*.*

Father argues that the Orphans' Court "erred and abused its discretion when it terminated [his] parental rights in that the Court should have concluded that the Agency failed to provide the appropriate referrals for services and obtain the relevant records to alleviate the necessity for placement." Father's Brief at 16.

According to Father, the caseworkers from the Agency "failed to accurately testif[y] as the completion status of his plan and failed to provide the appropriate documents that would lead to the conclusion to terminate his parental rights." *Id*. at 17. Father asserts that, "[g]iven the lack of referrals, [he] was forced to complete [a parenting] program by way of self-referral." *Id.*

He also claims that with regard to the mental health goal and the financial responsibility goal, the Agency handled the situation "just as incompetently as the other goals." *Id.* Father concludes that "the Agency caseworker[s'] testimony did not support the [orphans'] court's conclusions to terminate his parental rights when [the] record clearly and convincingly indicates the caseworkers made no attempts to [him] with the services necessary for him to progress on his plan." *Id.* at 18.

These arguments focus on the credibility of the caseworkers and Father. Since the Orphan Court did not find Father's testimony to be credible, we see no basis to disturb Orphan Court's finding that the Agency provided the appropriate referrals. We dismiss these arguments.

Moreover, once the court granted legal custody of the Children to the Agency, Father had a responsibility to complete his FSP objectives so he could alleviate the issues that led to the removal of the Children. The Agency made the appropriate referrals and it was then Father's responsibility to follow through on obtaining the services. Father did little and has no legal basis to argue now that he failed to meet his FSP objectives because of the alleged failures of the Agency.

Accordingly, the court did not abuse its discretion in terminating Father's parental rights pursuant to 23 Pa.C.S. §2511(a)(1), and we need not consider the other bases for termination under this section. **See B.L.W.**, *supra*.

## Termination Pursuant to 2511(b)

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." **In re: Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the trial court must also discern the nature and status of the parent-child

bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

In cases where there is no evidence of a bond between a parent and a child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Thus, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

In the instant case, the Orphans' Court first described the detrimental impact that Father's inability to provide a stable environment for the Children and put the Children's need ahead of the Mother's needs would have on the Children:

> The Court takes seriously Dr. Gransee's testimony [sic] in which he sees a repetitive harmful pattern in these people's relationship, Mother in putting cocaine above all else in her life and Father not being able to separate from mother, sober or not. [The Children] need the types of homes they now reside in, with stable parents and a stable environment. They need parents who do not present the model of drug use and lack of both physical and emotional commitment to them. They should not have to wait a period of at least six months or more to see if Mother is capable of remedying her problems or if Father is capable of placing Mother and her drug related difficulties in an appropriate perspective. Accordingly, the Court believes the best interest of [the Children] requires that Mother's and Father's parental rights be terminated and the children be adopted by loving and committed families.

**Opinion Sur Appeal** at 16-17.

The Orphan's Court then properly concluded that there was no meaningful bond between the Father and the Children because the Children are doing well in their foster homes, they have been separated from their

parents for several years and when they lived with Father, he failed to protect them from Mother's drug addiction and provide them with stability or consistency:

> The testimony throughout this matter indicates that all of the [C]hildren are doing well in their foster homes. . . . [Four] of these children have been separated from their parents since August of 2013. While they were still in Father's custody, they watched Mother take her drugs or disappear periodically into the street or another community. There was no stability for them in terms of loving and consistent parents. [A.L.R.] has never lived with Father or Mother, having been placed in custody directly after her birth. All of the [C]hildren seem happy and healthy in their foster homes and are bonded to their foster parents. **There is nothing in the record indicating a current strong bond between the Children and their parents**.

*Id*. at 16. (emphasis added).

Father argues that the record establishes that he played a significant role in their lives, and that, prior to placement, "the [C]hildren had enjoyed the emotional and financial support of [] Father." Father's Brief at 18. However, as discussed above, the trial court did not find Father's testimony to be credible and we will not disturb that finding. Consequently, this argument fails.

Father next asserts that the Children's placement with the Agency "was necessitated due to Mother's drug use and not issues relating to [his] mental health or drug problems." *Id.* This is an issue that is irrelevant in analyzing 2511(b) which focuses on the impact that termination will have on the child and not the reasons that the court originally adjudicated the child dependent.

Finally, Father objected that instead of a psychologist, it was "foster care workers [who] offer[ed] opinions as to bonding[.]" ***Id.*** As discussed above, this Court has consistently held that social workers may meet the definition of "expert" as set forth in Pennsylvania Rule of Evidence 702 and are qualified to offer expert opinions about the bond between a parent and child. In this case, we find no reason to disturb the trial court's determination that the bonding testimony was appropriate. ***See also*** Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 702.08[3] (2016 ed. LexisNexis Matthew Bender).

## CONCLUSION

In sum, our review of the record supports the Orphans' Court's determination that the Agency met its statutory burden of proving by clear and convincing evidence that Father's parental rights should be terminated pursuant to 23 Pa.C.S. §§ 2511(a)(1) and 2511(b). Accordingly, we affirm.

Decrees affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/24/2016